UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT MICHAEL JARAB,<br>Petitioner,<br>v.<br>SECOND JUDICIAL DISTRICT FOR THE COUNTY OF WASHOE, *et al.*,<br>Respondents. | Case No. 3:26-cv-00102-MMD-CSD<br>ORDER |

## I. SUMMARY

Petitioner Robert Michael Jarab, a pretrial detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1 ("Petition")). This matter is before the Court for adjudication on a single claim for relief that the Double Jeopardy Clause precludes the State from retrying Jarab. The Court denies the Petition and denies a Certificate of Appealability.

## II. BACKGROUND

Jarab is charged with murder and domestic battery by strangulation. (ECF No. 17-2.) At a hearing in January 2025, Deputy District Attorney Adam Cate requested that the February 2025 trial date be vacated due to personal issues, specifically the health of his father who had been placed on hospice care. (ECF No. 17-8.) Jarab was not in custody and the state district court reset the trial date.

On July 28, 2025, trial began. On July 30, 2025, during examination of the fourth witness, Cate was told that his father died. Cate requested a recess, and informed the state district court outside the presence of the jury that his father died. Cate informed the state district court that he was unable to continue with the trial due to the death of his father. The state district court excused the jury until the following morning.

On the same day, the State filed a motion to declare a mistrial due to manifest

necessity. (ECF No. 1-1 at 343-347.) The following day, the parties appeared for oral argument with the State represented by Chief Appellate Deputy District Attorney Jennifer Noble. (*Id*. at 349.) Prior to trial, Cate gave notice that he was resigning as a deputy district attorney effective August 8, 2025. The State informed the state district court that no other prosecutor had been assigned to the trial for over a year. The State asserted that reassigning the trial to another prosecutor would require review of the trial transcript, the case file, and voluminous pleadings in the case. In addition, the State asserted that due to the court reporter's workload, the transcript for the first few days of trial would not be complete for some time. The State argued it would be deprived of a fair trial if another prosecutor were required to take over the murder trial without access to the trial transcripts. The State argued that a one-month trial continuance would be impractical because of the juror's waning memories or potential misconduct.

During oral argument on the motion for mistrial, Jarab argued that a second trial prolongs his financial and emotional burden and that counsel tailored her questioning and strategy to the jury. In addition, he argued that the State would gain an unfair advantage because it heard the defense theory of the case and the prosecution witnesses would know what questions and arguments the defense planned to present. He argued that there were issues with keeping witnesses ready for subpoena and that the murder case was not particularly complex.

The state district court granted the State's request for mistrial. Jarab filed an emergency petition for writ of prohibition, or in the alternative, writ of mandamus. The Nevada Supreme Court denied Jarab's petition. (ECF No. 1-2.) The state district court reset jury trial for July 2026. In February 2026, Jarab initiated the instant federal habeas matter. (ECF No. 1.)

## III. STANDARD OF REVIEW

Section 2241 provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions" for prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a). Section

2241 confers jurisdiction for "habeas petition[s] raising a double jeopardy challenge to a petitioner's pending retrial in state court." *Wilson v. Belleque*, 554 F.3d 816, 821 (9th Cir. 2009).

Because the Court's review proceeds under § 2241, the deference owed to a state court under 28 U.S.C. § 2254(d) would not apply. *See Harrison v. Gillespie*, 640 F.3d 888, 897 (9th Cir. 2011). The § 2241 petitioner need not show that the state court decision was contrary to or an unreasonable application of clearly established federal law, as required by § 2254(d). *Stow v. Murashige*, 389 F.3d 880, 888 (9th Cir. 2004). Accordingly, the Court reviews de novo whether Jarab's rights under the Double Jeopardy Clause would be violated by retrial.

## IV. DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 503 (1978) (citation omitted). But that principle "does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." *Wade v. Hunter*, 336 U.S. 684, 688 (1949).

When a judge declares a mistrial after the proceedings have commenced, retrial will be permitted if the mistrial was justified by manifest necessity. *Washington*, 434 U.S. at 505. Under the manifest-necessity standard, "a trial can be discontinued when particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." *Wade*, 336 U.S. at 690. Courts may properly find manifest necessity "to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial," *Illinois v. Somerville*, 410 U.S. 458, 464 (1973), or a mistrial is needed to "afford[ ] the prosecutor one full and fair opportunity to present his evidence

to an impartial jury." *Washington*, 434 U.S. at 505. For purposes of assessing whether that standard is met, "the key word 'necessity' cannot be interpreted literally; instead, . . . there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Id.* at 506. To establish a manifest necessity, "the prosecutor must shoulder the burden of justifying the mistrial," and "[h]is burden is a heavy one." *Id.* at 505.

"A judicial determination of manifest necessity is reviewed for abuse of discretion, but the level of deference varies according to the circumstances in each case." *United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008). "At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence," for which "the strictest scrutiny is appropriate." *Washington*, 434 U.S. at 507-08. "At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict." *Id*. at 509. In those situations, "[t]he trial judge's decision to declare a mistrial . . . is . . . accorded great deference by a reviewing court." *Id.* at 510. "Nevertheless, because the mistrial decision affects a constitutionally protected right, 'reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised "sound discretion" in declaring a mistrial.'" *United States v. Sanders*, 591 F.2d 1293, 1297 (9th Cir. 1979) (quoting *Washington*, 434 U.S. at 514).

Because there is no indication that the State or Cate requested a mistrial for tactical advantage, the Court reviews the trial court's ruling under the more deferential standard. Under this standard, the Court assesses whether the trial court (1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chose the alternative least harmful to a defendant's rights, and (3) acted deliberately instead of abruptly. *See Chapman*, 524 F.3d at 1082. In addition, the Court examines whether the trial court based its decision on evidence presented in the record. *Id*.

Following the State's motion for mistrial, the trial court held oral argument to hear the opinion of the parties about the propriety of the mistrial. (ECF No. 1-1 at 352.) The trial court asked the State if there were any options or alternatives and the State asserted that there weren't any other viable alternatives "except perhaps if [the trial court] did continue

this case, it would have to be somewhat for an extended length of time . . . ." (ECF No. 1-1 at 354-55.) The State proffered that if the trial were continued, a prosecutor would need time to prepare and that based on the court reporter's schedule, "it would take her some time, perhaps months to prepare a partial transcript . . . ." (*Id*. at 352.) The State also asserted that there would be issues with the juror's waning memories and potential juror misconduct if a juror discovered that Cate's father passed away after realizing a different prosecutor was continuing the trial. (*Id*. at 353.)

The defense proposed a brief continuance to the following week to continue trial. (*Id*. at 360.) Defense counsel stated that she confirmed that the defense witnesses would be available. (*Id*.) Defense counsel asserted that they had "gone through a fair amount of painstaking care in picking this jury," and that the jury was "engaged," and "actively taking notes." The defense also questioned whether another prosecutor worked on or had knowledge of the case and why another prosecutor could not step in to replace Cate. (*Id*. at 365-66.)

In response, the State asserted that it was unable to reach Luke Prengamen, the supervising Chief District Attorney to Cate, who was out of the office and out of state. (*Id*. at 369.) In addition, Chief District Attorney Bolenbaker had not actively worked on the case for three years. (*Id*. at 375-76.) The State highlighted that even with the proposed course of action of having another prosecutor continue the trial the following week, the State would need a transcript to allow a prosecutor to prepare for trial. (*Id*. at 370.) The trial court questioned why Cate did not have "a second chair" assigned to Jarab's trial. (*Id*. at 371.) The State informed the trial court that it was not the District Attorney's practice to have two attorneys assigned to every case because they did not have the resources to do that. (*Id*.)

In reaching its decision that there was a manifest necessity to declare a mistrial, the trial court acted deliberately and not abruptly, hearing argument from defense counsel and the State. The trial court noted that it is "very aware and absolutely respects all rights of [Jarab], and also knows and understands the rights of the State and the duty of all parties to protect the public." (*Id*. at 376.) In discussing an extended continuance of the

trial, the trial court noted that it did not think that "this jury can wait that long and then come back and remember all the evidence that has already been presented and/or not be tainted while they're waiting." (*Id*. at 378.) In *Chapman*, the Ninth Circuit noted that a trial judge's determination that a jury's attention span could not withstand a delay of between two and four weeks was due substantial deference in determining the appropriateness of a mistrial. *Chapman*, 524 F.3d at 1083.

In light of the severe difficulties associated with the alternatives considered by the trial court, declaring a mistrial was the reasonable option available to ensure a fair trial. *Cf. Gouveia v. Espinda*, 926 F.3d 1102, 1113 (9th Cir. 2019) (holding that trial court did not choose least harmful alternative to the defendant by declaring mistrial where jury had reached unanimous verdict and "one probably in [defendant's] favor"); *see also Wade*, 336 U.S. at 689 (finding that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments").

Lastly, the trial court based its decision on the evidence in the record. The record reflects that the State presented to the trial court that the State reached out to the court reporter regarding the timeline for preparing trial transcripts, and that "it would take [the court reporter] some time, perhaps months to prepare a partial transcript based on her current obligations, various appeals, and because she would be subject to potential sanctions by our Nevada appellate courts if they don't meet those deadlines." (ECF No. 1-1 at 352.) Although Jarab requested trial transcripts on an expedited basis in August 2025 that were completed in 17 days, the record nonetheless reflects a delay in the preparation of trial transcripts for a substituted prosecutor to continue the trial. (ECF No. 1-1 at 391, 394.) The record reflects that there was an unexpected and indefinite or lengthy mid-trial delay that would affect the jury's recollection and assessment of credibility.

Giving deference to the trial court's determination, the Court concludes that that the trial court did not abuse its discretion in holding that the extraordinarily unique circumstances of this case created a manifest necessity for a mistrial. Therefore, retrial is

not prohibited under the Double Jeopardy Clause. The Court denies the Petition for Writ of Habeas Corpus.

## V. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## VI. CONCLUSION

It is therefore ordered that Petitioner Robert Michael Jarab's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Court directs the Clerk of Court to enter judgment and close this case.

DATED THIS 29th Day of October 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE